THE KROGER CO. ET AL., APPELLANTS, *v.* SCHNEIDER, TAX COMMR., APPELLEE.

(No. 40002—Decided February 8, 1967.)

82

*Messrs. George, Greek, King & McMahon, Mr. Darold I. Greek* and *Mr. Kiehner Johnson,* for appellants.

*Mr. William B. Saxbe,* attorney general, and *Mr. Edgar L. Lindley,* for appellee.

MATTHIAS, J. This case presents an issue heretofore undecided by this court, namely whether Section 5711.22(B), Revised Code, which provides for a graduated taxation upon merchants inventory, is authorized by Section 2, Article XII of the Constitution of Ohio, and, if so, whether such is violative of either Section 2, Article I of the Constitution (the equal protection clause), or the Fourteenth Amendment to the Constitution of the United States (the equal protection clause). In view of the significance of the question before this court, we feel that some comment upon the evolution of the Constitution of Ohio is required.

With the adoption of the present Constitution of 1851, Ohio became what is known as a "uniform rule" state. Section 2, Article XII, then read, in part: "Laws shall be passed, taxing by a uniform rule * * * all real and personal property, according to its true value in money * * *." The plain intent of this section was to terminate practically all the Legislature's discretionary powers. Property was made the *sole* basis for

taxation. All that was left for the General Assembly was to fix the rate, impose the taxes and, if it chose, provide for the specified exemptions. In the view of a contemporaneous decision:

"* * * No language in the Constitution, perhaps, is more important than this [*i.e.,* taxing by a uniform rule]; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. * * * Taxing by a uniform rule requires uniformity, not only in the *rate* of taxation, but also uniformity in the *mode* of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. * * * [T]he uniformity in the rule required by the Constitution * * * must be extended to *all property* subject to taxation, so that all property may be taxed alike, equally—which is taxing by a uniform rule. * * *" *Exchange Bank of Columbus* v. *Hines, Treas.* (1853), 3 Ohio St. 1, 15.

Although Section 2, Article XII, remained unchanged for eight decades, so far as its provisions for the taxation of personal property was concerned, the uniform rule did not go unchallenged. As Ohio evolved from an agricultural community into one of the industrial centers of the United States, with an accompanying rise in the importance, value and meaning of personal property, repeated attempts were made to alter the static methods of its taxation. Further, the greater emphasis placed on intangible personal property by this evolution created the inequity of a "double taxation" as in the case of a farm and the mortgage thereon. To combat these inequities, some favored exemption and others favored a classification with a lower rate of taxation on intangible personal property.

The dissatisfaction engendered by the "uniform rule" finally reached its climax in 1925 with Amended Senate Joint Resolution No. 29, whereby the General Assembly authorized the appointment of a joint committee to determine the best and most equitable methods of taxation. The resultant Report of the Joint Legislative Committee on Economy and Taxation (1926), Eighty-Sixth General Assembly, stated, at page 133,

that "your committee recommends that the uniform rule of taxation * * * be repealed." The report based this finding on two arguments. The first: "It scarcely needs argument to prove that different classes of property do not have equal tax paying ability." 1926 Report, *supra*, 133 (classification argument); the second: "The taxation of intangible property such as mortgages, bonds, shares of stock as well as the property which these instruments represent is double taxation." 1926 Report, *supra*, 138 (exemption argument). Thus, this report, which is the foundation of the 1929 amendment to Section 2, Article XII of the Constitution of Ohio, bases its recommendation to amend the Constitution upon the rigidity which denies to the General Assembly the power to classify or exempt personal property. Nothing therein implies the power to create a graduated taxation of personal property within any such classification.

Upon receipt of this report, the General Assembly proposed (113 Ohio Laws 790 [1929]) a constitutional amendment of Section 2 of Article XII of the Constitution. This proposed amendment was submitted to the people and adopted by them at the election of 1929. It became effective January 1, 1931, substituting for the directive, that "*all* property" must be taxed by a uniform rule, the provision that "land and improvements thereon shall be taxed by uniform rule according to value." More significant was the insertion of the phrase, "without limiting the general power [of the Legislature], subject to [the equal protection clause] * * * to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt * * *." This provision, combined with the deletion of personal property from the uniform rule, for the first time allowed the General Assembly, if it so desired, to classify personal property for purposes of taxation and to assess or tax individual classes at varying rates or to exempt particular classes from all taxation. As such, it became commonly known to lawyers and jurists alike as the "classification amendment."

The resultant legislation and the accompanying Report of the Special Joint Taxation Committee on the Revision of the Ohio Taxation System, Senator Robert A. Taft, chairman, is-

sued in 1931, represent the only after-the-fact expression of intent by the Legislature as to the meaning of the Constitutional Amendment of 1929. This report outlines the proposed legislation in general terms. It is significant that while exemptions and classifications abound, *"the taxation of tangible property will be on a uniform basis,* and many existing inequalities will be eliminated." (Emphasis added.) 1931 Report, 4.

In furtherance of the concept that a graduated taxation of personal property was not contemplated or intended by the 1929 amendment, it is interesting to note that a contemporaneous opinion rendered by the Supreme Court of the United States in *Stewart Dry Goods Co.* v. *Lewis* (1935), 294 U. S. 550, 557, in an analogy to the case being decided recognizes that "the operation of the statute [in question] is *unjustifiably unequal, whimsical and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer * * *.*" (Emphasis added.) While this is said in dicta and therefore is not binding it is certainly an expression of the prevalent thought of the era in which the 1929 amendment was conceived. This statement is akin to that made by this court in *Exchange Bank of Columbus, supra* (3 Ohio St. 1), and it does not stem from a similar specific constitutional mandate. Rather, it is a result of the equal protection clause of the Constitution of the United States.

Turning now to the case at hand and mindful of the presumption of the constitutional validity of statutes (see *Cincinnati, Wilmington & Zanesville R. R. Co.* v. *Commissioners of Clinton County,* 1 Ohio St. 77, 82), we must reach a decision as to the constitutionality of Section 5711.22(B), Revised Code. At the outset, it is obvious that this section requires that all the personal property of a merchant as defined therein must be listed and assessed. Therefore, in view of the directive contained in Section 5709.01, Revised Code, that "[a]ll personal property located and used in business in this state * * *[is] subject to taxation, except only such as is expressly exempted therefrom," appellee's argument that this section is in the nature of an exemption and is, therefore, constitutional because it favors all within the particular class equally is erroneous. As

applied to taxation, "exemption" is freedom from the burden of enforced contributions to the expenses and maintenance of government, or an immunity from a general tax. The fact that it has long been the practice in this state to assess property only for a percentage of the actual value does not create an exemption, for the Revised Code is itself explicitly contra. If this were in fact an exemption, a different result might follow.

While Section 5711.22(B), Revised Code, does not contain provisions for an exemption of property, it does explicitly designate a classification of property, in this case "merchants inventory," and provides for a direct, or ad valorem taxation thereof. The constitutional authority for this is no longer open to question in Ohio, for it is well settled that Section 2, Article XII of the Constitution of Ohio, as adopted by the people in 1929, effective January 1, 1931, empowers the General Assembly to classify personal property for the purposes of taxation. The only limit upon this power is that any such classification must be reasonable and not arbitrary. Paragraph two of the syllabus in *State, ex rel. Struble,* v. *Davis et al., Tax Comm.,* 132 Ohio St. 555, and paragraph one of the syllabus in *Continental Can Co., Inc.,* v. *Donahue, Tax Commr.,* 5 Ohio St. 2d 224, are approved and followed. In other words, "under Section 2 of Article XII of the Constitution of Ohio, the General Assembly has the power to determine the subjects and methods of taxation and exemption of personal property, limited only by Article I (equal protection clause) of the state Constitution." Paragraph one of the syllabus of *State, ex rel. Struble,* v. *Davis et al., Tax Comm.,* 132 Ohio St. 555, paragraph one of the syllabus of *Zangerle, Aud.,* v. *Republic Steel Corp.,* 144 Ohio St. 529, paragraph nine of the syllabus of *State, ex rel. Williams,* v. *Glander, Tax Commr.,* 148 Ohio St. 188, and paragraph one of the syllabus of *Reed* v. *County Bd. of Revision of Fairfield County,* 152 Ohio St. 207, approved and followed.

However, the statute in question does more than create and tax a particular class of personal property. In fact, its very basis is that the rate of assessment for taxation of such class varies directly with the total amount of property held, from (in 1968) 50% of the value to almost 70%. This is no longer solely a classification of personal property, for Section 5711.

22(B), Revised Code, directly imposes a different rate of assessment (and, therefore, a different burden of taxation) upon property within a particular class. Although this percentage differential, in the aggregate, becomes very substantial when converted into dollars, appellee contends that, since the savings to each merchant is identical, all merchants receive equal treatment. This argument is valid only if the classification involved (*i.e.*, "merchants' inventory") is further subdivided into the monetary subclassifications consisting of (1) the first $100,000 of inventory, and (2) the remaining inventory. Such subclassification into monetary values is not authorized by the Constitution of Ohio and is violative of the equal protection clause of the Constitution. The crux of the matter here is that in 1968 and thereafter a merchant owning inventory valued at $100,000 will be assessed at 50% of value, and a merchant owning inventory valued at $200,000 will be assessed at 60% of value. This, in itself, is expressly forbidden by the Ohio Constitution as it existed before the 1929 Amendment. See *Exchange Bank of Columbus* v. *Hines, Treas., supra* (3 Ohio St. 1). It is also, as we have seen, alien to the intent, spirit and purpose of the amendment. However, since the amendment is silent as to this concept and, since, Section 2, Article XII, is a limitation upon the legislative power to tax as conferred upon that body by Section 1, Article II, this argument, while persuasive, is not conclusive. The entire evolution of the taxing power since adoption of the Constitution of 1851 has contained the basic premise that any discrimination should be eliminated from taxation. Both the 1926 Report and the 1931 Report of the Joint Legislative Committee on Taxation, *supra,* evidence the desire to develop a system of taxation even more equitable than that which theretofore existed and avoid, in the words of Judge Zimmerman, "[d]iscrimination in the field of taxation [arising] * * * when persons of the same class are taxed differently * * *." *Clark* v. *City of Cincinnati,* 163 Ohio St. 532, 535.

Less than a year ago this court held that:

"1. Personal property may be classified for purposes of taxation. Such classification must be reasonable and not arbitrary.

"2. Where personal property has been properly classified for tax purposes, all such property *in the same class* must be assessed and taxed in the same manner." Paragraphs one and two of the syllabus of *Continental Can Co., Inc., v. Donahue, Tax Commr., supra* (5 Ohio St. 2d 224), affirmed    U. S.   . We adhere to that holding.

In conclusion, we hold that the amendment of Section 2, Article XII of the Constitution of Ohio, as effective January 1, 1931, removes the restrictions upon the General Assembly forbidding it to classify personal property for taxation; that therefore the basic power of taxation stemming from Section 1, Article II, allows personal property to be taxed at the discretion of the General Assembly, limited only by the equal protection clause; and that the equal protection clause requires all property within an enumerated classification that has not been lawfully exempted from taxation to be assessed and taxed at an equal rate.

Since we hold that Section 5711.22(B), Revised Code, to the extent that it provides that personal property held by a merchant for sale and not for resale shall be listed and assessed for taxation at less than 70% of its value, violates Section 2, Article I of the Constitution of Ohio, and is, therefore, null and void, it is unnecessary to decide appellants' contention that it is also violative of the Fourteenth Amendment to the Constitution of the United States.

We, therefore, reverse the judgment of the Court of Appeals and judgment is rendered accordingly.

*Judgment reversed.*

TAFT. C. J., ZIMMERMAN, O'NEILL, HERBERT, JOHNSON and BROWN, JJ., concur.

JOHNSON, J., of the Seventh Appellate District, sitting for SCHNEIDER, J.