[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 53.]

VALVOLINE INSTANT OIL CHANGE, INC., APPELLANT, v. TRACY, TAX COMMR., APPELLEE.

ASHLAND BRANDED MARKETING, INC., APPELLANT, v. TRACY, TAX COMMR., APPELLEE.

SUPERAMERICA GROUP, INC., APPELLANT, v. TRACY, TAX COMMR., APPELLEE.

[Cite as *Valvoline Instant Oil Change, Inc. v. Tracy*, 1997-Ohio-7.]

*Taxation—Listing personal property--State's use of different tax listing date for existing businesses than for new businesses not a violation of right to equal protection.*

(Nos. 96-52, 96-53 and 96-54--Submitted September 19, 1996--Decided March 19, 1997.)

Appeals from the Board of Tax Appeals, Nos. 94-B-1179, 94-B-1180 and 94-B-1181.

————————————

{¶ 1} Ashland Oil, Inc. ("Ashland"), which paid its 1989 personal property tax for the fiscal year ending September 30, 1988, operated three divisions known as Valvoline Instant Oil Change, Ashland Branded Marketing, and SuperAmerica. Prior to October 2, 1989, Ashland incorporated these divisions as separate, wholly owned subsidiaries. Ashland named them Valvoline Instant Oil Change, Inc., Ashland Branded Marketing, Inc., and SuperAmerica Group, Inc., appellants. On October 1, 1989, Ashland transferred the assets of the former divisions to the respective subsidiaries, and the subsidiaries began business. The subsidiaries filed their 1989 personal property tax returns employing Ashland's fiscal year listing date of September 30, 1988.

**{¶ 2}** The Tax Commissioner, appellee, audited the subsidiaries' returns. He listed their fixed assets as of the date they first engaged in business, October 1, 1989, under R.C. 5711.03. The commissioner also listed the average of their actual inventory levels for the last three months of 1989.

**{¶ 3}** The subsidiaries concede that the commissioner assessed them according to the statutes; however, they claim that this treatment denies them equal protection.  On appeal, the Board of Tax Appeals ("BTA") affirmed the commissioner's orders after removing some property from the assessments according to the parties' stipulations.  The BTA declined to address the constitutional questions under *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St. 3d 229, 520 N.E.2d 188, paragraph one of the syllabus.

**{¶ 4}** These causes are before this court upon appeals as of right.

————————————

*William R. Buzo*, for appellants.

*Betty D. Montgomery*, Attorney General and *James C. Sauer*, Assistant Attorney General, for appellee.

————————————

***Per Curiam.***

**{¶ 5}** R.C. 5711.03 provides:

"*** [A]ll taxable property shall be listed as to ownership or control, valuation, and taxing districts as of the beginning of the first day of January, annually, except that taxable personal property and credits used in business shall be listed as of the close of business of the last day of December, annually ***. *When a person or taxpayer engages in business in this state on or after the first day of January, in any year, he shall list all his taxable property, except inventory, as to value, ownership and taxing districts as of the date he engages in business.  In listing inventory as to ownership and taxing districts he shall list the probable*

*average value intended to be used in business from the date he engages in business until the first day of January next thereafter. \*\*\**" (Emphasis added.)

{¶ 6} The subsidiaries maintain that requiring them to list their property as of the day they first engaged in business denies them equal protection when existing businesses list their property as of the close of business of the prior year. They argue that this treatment results in an unequal burden on them as new taxpayers. We disagree and affirm the commissioner's orders.

{¶ 7} We observed in *Doraty Rambler, Inc. v. Schneider* (1965), 4 Ohio St.2d 37, 39, 33 O.O. 2d 342, 343, 212 N.E.2d 580, 582, that "[t]he tangible personal property tax in Ohio is prospective in nature and is levied and assessed at the beginning of the year for the privilege of using tangible personal property in business for the duration of the coming year." The state may use antecedent facts as criteria in valuing personal property inventory and, in this case, other personal property used in business for the prospective personal property tax. *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 233, 520 N.E.2d 188, 193.

{¶ 8} In *Nordlinger v. Hahn* (1992), 505 U.S. 1, 112 S. Ct. 2326, 120 L.Ed. 2d 1, the United States Supreme Court held that a state could discriminate in favor of longer-term owners of real property to the detriment of newer property owners. The court, 505 U.S. at 10, 112 S. Ct. at 2331-2332, 120 L.Ed. 2d at 12, set forth the conditions under which a state may classify individuals:

"The Equal Protection Clause of the Fourteenth Amendment, §1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S. Ct. 560, 561, 64 L.Ed. 989, 990-991] (1920).

"As a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice their laws result in some inequality.' *McGowan v. Maryland*, 366 U.S. 420, 425-426 [81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393, 398-399] (1961). Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally furthers a legitimate state interest. See, *e.g., Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439-441 [105 S. Ct. 3249, 3254-3255, 87 L.Ed. 2d 313, 320-321] (1985); *New Orleans v. Dukes*, 427 U.S. 297, 303 [96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517] (1976)."

{¶ 9} In this case, the state may discriminate between new businesses and existing businesses insofar as these classifications have different listing dates. As mentioned, the state employs antecedent facts, *i.e.,* the property held by a business at the close of a business year, to estimate prospectively the amount of property that a taxpayer will use in business during the upcoming tax year. However, new businesses do not have assets as of the close of the prior business year. They have not been in business. Thus, Ohio employs the property the new business owns on the day it first engages in business in Ohio and the new business's probable average value of inventory in calculating its personal property tax. This Ohio may do. To levy this prospective tax on the property of new businesses, a legitimate interest, Ohio may calculate the value of the property as of the date the new business has its first opportunity to use the property in business. Ohio may also require the listing of the probable average value of inventory because it evidently has concluded it has no other realistic measure of such inventory. We hold that these listing requirements, which place new businesses in a different classification from existing businesses, rationally further a legitimate state interest, the prospective taxation of personal property used in business.

**{¶ 10}** Next, the subsidiaries cite *Kroger Co. v. Schneider* (1967), 9 Ohio St. 2d 80, 38 O.O.2d 204, 223 N.E.2d 676, to support their argument that R.C. 5711.03 places an unequal burden of taxation on them. *Kroger* is inapposite. In *Kroger,* we held unconstitutional, under Section 2, Article I, Ohio Constitution, a statute that applied graduated assessment rates to the same class of inventory based on a merchant's total value levels. Such is not the case here. Here, Ohio employs a different tax listing date for existing businesses than for new businesses. As we have held, this treatment does not violate the subsidiaries' right to equal protection.

**{¶ 11}** Accordingly, we affirm the decisions of the BTA.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____