Plaintiffs Sharon Malcolm Smith, Cheryl Debose, and Dr. Wanda Jean Green appeal from the judgment of the trial court which granted judgment on the pleadings to defendants the State Superintendent of Public Education, the State of Ohio, the Governor of the State of Ohio and Mayor Michael R. White in plaintiffs' action to have Amended Substitute House Bill 269 ("H.B. 269") declared unconstitutional and contrary to the laws of the state and the Charter of the City of Cleveland. For the reasons set forth below, we reverse the judgment of the trial court insofar as it upheld the four year delay in holding a referendum, see R.C. 3311.73, and affirm the remainder of the matter.
On August 13, 1997, the Ohio Legislature passed H.B. 269. Key provisions of this legislation are the creation of a "municipal school district," defined as "a school district that is or has ever been under a federal court order requiring supervision and operational, fiscal and personnel management of the district by the state superintendent of public instruction." See R.C. 3311.71
(A) (1). Upon the termination of the federal court order, management and control of the municipal school district is to be assumed by a new nine-member board of education appointed by the mayor and various organizations. The new board serves for at least Controls[.]" See Reed v. Rhodes (N.D.Ohio 1995), Case No. 1:73CV1300.
By operation of this order, the City of Cleveland School District became a "municipal school district" pursuant to H.B. 269; R.C. 331.71. It is undisputed that the Cleveland City School District is, at present, the only school district in the state to qualify as a "municipal school district" under the new legislation.
H.B. 269 was subsequently challenged in the United States District Court for the Northern District of Ohio in two separate actions styled Linda Spivey, et al. v. State of Ohio, Case No. 1:97CV2308; and Tanya Mixon et al. v. State of Ohio et al., Case No. 1:97CV2309. The matters were consolidated and all parties filed motions for judgment on the pleadings. Within these consolidated actions, the District Court was called upon to consider whether H.B. 269 violates: the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Article I, Section 2, of the Ohio Constitution; the Voting Rights Act, 42 U.S.C. § 1971 et seq.; Article VI, Section 3 of the Ohio Constitution which authorizes school districts to determine by referendum vote the number of members and organization of their boards; and Article II, Section 26 of the Ohio Constitution which requires all laws of the state of Ohio to have uniform operation throughout the state. The court was additionally asked to consider whether the portion of the statute which gives the mayor authority to appoint board members conflicts with the mayor's fiduciary duty to the city.
The District Court ultimately decided that the plaintiffs in both actions had failed to state claims upon which relief could be granted, and it entered judgment for defendants. Plaintiffs in this matter have advised this court that the "decision by the federal court has been appealed[.]" Plaintiffs-Appellants' Brief at 9.
On October 24, 1997, plaintiffs filed this matter with the trial court. In their amended complaint, plaintiffs[1] asserted that the statute violates: the equal protection provisions of Article I, Section 2 of the Ohio Constitution; the referendum provisions of Article VI, Section 3 of the Ohio Constitution; the uniform operation of laws provision of Article II, Section 26 of the Ohio Constitution. Plaintiffs also maintained that the statute violates Article XIII, Section 1 of the Ohio Constitution; Article XVIII, Section 3 and 7 of the Ohio Constitution (Home Rule provisions), and subverts the fiduciary duty of the mayor, and the Charter of the City of Cleveland by authorizing the mayor to control a school district.
The defendants filed motions for judgment on the pleadings in which they asserted that pursuant to the doctrine of res judicata, the federal court decision disposed of this action. Defendants additionally maintained that plaintiffs' attacks on the statute were without merit. The trial court determined that justification for the law was readily apparent and that, based on the court's conclusions and the rulings in the federal case, the issues raised by plaintiffs were without merit. Plaintiffs now appeal, assigning six errors for our review.
Within their first assignment of error, plaintiffs contend that the trial court erred in granting defendants' motion for judgment on the pleadings to the extent that it determined that the decision of the District Court in Linda Spivey, et al., v. Stateof Ohio, case no. 1:97CV2308; and Tanya Mixon et al., v. State ofOhio et al., case no. 1:97CV2309, precluded this action.
The standard of review a trial court must use in ruling upon a motion for judgment on the pleadings pursuant to Civ.R. 12 (C) was set forth in Case Western Reserve Univ. v. Friedman (1986),33 Ohio App.3d 347, 348, as follows:
 "A motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed and raises only questions of law. The pleadings must be construed liberally and in a light most favorable to the party against whom the motion is made, and every reasonable inference in favor of the party against whom the motion is made should be indulged. Vaught v. Vaught
(1981), 2 Ohio App.3d 264, 2 OBR 293, 441 N.E.2d 811; Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113. The motion should be denied if it cannot be determined from the face of the pleadings that the pleading does not state a claim upon which relief can be granted. Calhoun v. Supreme Court of Ohio (1978), 61 Ohio App.2d 1, 15 O.O.3d 13, 399 N.E.2d 559."
Pursuant to Civ.R. 12 (C), a trial court may consider only the statements contained in the pleadings, and may not consider any evidentiary materials. Burnside v. Limbach (1991), 71 Ohio App.3d 399,402. Thus, as this court stated in Musa v. GillettCommunications, Inc. (1997), 119 Ohio App.3d 673, 680:
 the defense of res judicata is not properly raised by a motion to dismiss because of the necessity of bringing to the court's attention matters outside of pleadings. It therefore becomes necessary to determine whether appellees' motions were before the trial court as motions to dismiss or as motions for summary judgment. (Footnote omitted).
In making the determination of whether a motion is before the court as a motion to dismiss or a motion for summary judgment, key concerns are the nature of the relief requested by the moving party, whether documentary evidence is appended to the motion and whether the nonmoving party had a reasonable opportunity to respond. Id.
In this matter, the defendants asserted that they were entitled to judgment on the pleadings by application of the doctrine of res judicata. Defendants and plaintiffs supported their positions on this issue with reference to matters outside the pleadings and several weeks later, the court made its ruling. It is therefore clear that the claim of preclusion by res judicata was, in effect, before the court pursuant to a motion for summary judgment.
In order for summary judgment to be properly rendered, it must be determined that:
 (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448. We therefore apply this framework herein.
It has long been recognized that the defense of res judicata applies, in a proper case, as between federal court and state court judgments. Rogers v. Whitehall (1986), 25 Ohio St.3d 67,69. "[R]es judicata . . . not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as the bulwark of the federal system." Allen v. McCurry (1980),449 U.S. 90, 95-96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308.
With regard to the manner of determining the preclusive effect of an antecedent federal judgment in a subsequent state court action, the Musa court's opinion instructs us that we are to apply federal law. See, also, 8 C. Wright, A. Miller E. Cooper, Federal Practice and Procedure Sec. 4468 (1981). See, generally, Restatement (Second) of Judgments Sec. 87 (1980) (federal law governs res judicata effect of all federal judgments, including those in diversity cases)[2]
Traditionally, federal courts have applied the doctrine of res judicata in the following manner: "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, supra, 449 U.S. at 94,101 S.Ct. at 414 (applied in the context of Sec. 1983 actions); WestwoodChemical Co., Inc. v. Kulick (C.A.6 1981), 656 F.2d 1224, 1227.
Finality is determined with reference to Fed.R.Civ.R. 54 (B) and concerns whether the prior order adjudicates all of the claims, rights, and liabilities of all of the parties. See BankOne, Akron, N.A. v. Atwater Ent., Inc. (1994), 96 Ohio App.3d 59,66; Musa v. Gillette Communications, Inc., supra, at 682-683. The prior federal action concerning H.B. 269 rejected all of the plaintiffs challenges to the legislation. The federal court judgment was therefore final, rendered on the merits, and terminated the controversy between the parties. Although plaintiffs in this matter indicate that the "decision by the federal court has been appealed," Plaintiffs-Appellants' Brief at 9, it is well-settled that the pendency of an appeal does not prevent that judgment from having res judicata effect. See Cullyv. Lutheran Medical Center (1987), 37 Ohio App.3d 64, 65. Indeed, only final judgments may be appealed. Fed.R.Civ.R. 54 (B).
As to the next requirement, the Supreme Court of the United States has recently affirmed that due process generally precludes giving conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein. See Richardsv. Jefferson Cty. Ala. (1996) 517 U.S. 793, 116 S.Ct. 1761. As explained in Meza v. General Battery Corp. (C.A.5 1990),908 F.2d 1262, 1266:
 It is a fundamental principle of American jurisprudence that a person cannot be bound by a judgment in litigation to which he was not a party. Martin v. Walks, ___ U.S. ___ 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989); Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940). The prohibition against using the result of prior judicial proceedings to determine the rights of strangers to those proceedings is required by the due process guarantees of the Fifth and Fourteenth Amendments. The popular expression of this principle is that "everyone is entitled to his own day in court."
Nonetheless, the Supreme Court has:
 "recognized the `familiar doctrine * * * that members of a class not present as parties to litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or * * * the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter.'"
Richards, supra, quoting Hansberry v. Lee (1940),311 U.S. 32, 40-41, 61 S.Ct. at 118-119.
We also note that it is well-settled that privity may be established an a variety of ways. See Restatement (Second) of Judgments Section 41:
41. PERSON REPRESENTED BY A PARTY
 (1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:
* * *
 (d) An official or agency invested by law with authority to represent the person's interests; or
 (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.
 (2) A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process.
In this instance, the record does not permit us to conclude that these plaintiffs and the plaintiffs in the federal court action were in privity. The federal court pleadings do not propose to assert claims on behalf of non-parties. Moreover, we do not know whether the public at large was represented by an official or agency invested by law with representative authority and we do not know whether the plaintiffs in the federal action were designated by the court as the representatives of all who are similarly situated. Absent this key information concerning this essential element of privity, we cannot conclude as a matter of law that the federal order precludes this action. As the Supreme Court of the United States stated in Richards, supra:
 there is no reason to suppose that the Bedingfield [v. Jefferson County (1988), 527 So.2d 1270] court took care to protect the interests of petitioners in the manner suggested in Hansberry. Nor is there any reason to suppose that the individual taxpayers in Bedingfield understood their suit to be on behalf of absent county taxpayers. Thus to contend that the plaintiffs in Bedingfield somehow represented petitioners, let alone represented them in a constitutionally adequate manner, would be "to attribute to them a power that it cannot be said that they had assumed to exercise." Hansberry, 311 U.S., at 46, 61 S.Ct., at 120.
The first assignment of error is well-taken. Nonetheless, because the trial court also determined that plaintiffs' substantive challenges to the legislation were without merit, this assignment of error is not dispositive of the matter and we shall continue to address plaintiffs' remaining assignments of error.[3]
In their second assignment of error, plaintiffs maintain that H.B. 269 violates Article XVII, Sections 7, 8, and 9 of the Ohio Constitution (the "Home Rule" provisions), and the Charter of the City of Cleveland because it effectively amends the city's charter with regard to the authority of the mayor but does not provide for a referendum of the city's voters to approve such changes.[4]
The Home Rule Amendment to the Ohio Constitution, ArticleXVIII, Section 3, provides:
 "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."
Municipalities may exercise the powers of local self-government by adopting a charter pursuant to Section 7, Article XVIII of the Ohio Constitution, which provides:
 "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article; exercise thereunder all powers of local self-government."
Sections 8 and 9, Article XVIII prescribe the procedures for adopting and amending a charter. State ex rel. Semik v. CuyahogaCty. Bd. of Elections (1993), 67 Ohio St.3d 334, 336.
Thus, passage of the Home Rule Amendment provides municipalities with "full and complete political power in all matters of local self government." (Emphasis added). The Home Rule amendment extends powers to municipalities as to matters which are purely of local concern; it does not invest exclusive powers in the municipalities. State ex rel. McElroy v. Akron
(1962), 173 Ohio St. 189, 194.
The Supreme Court explained this limitation in Beachwood v.Board of Elections (1958), 167 Ohio St. 369, 370, as follows:
 Shortly after the adoption of these provisions, in the first of a long series of cases interpreting them, Chief Justice Shauck in State ex rel. City of Toledo v. Lynch, 88 Ohio St. 71, 102 N.E. 670, 673, 48 L.R.A., N.S., 720, Ann.Cas. 1914 D, 949, made the basic definition of the meaning of the phrase, `all powers of local self-government,' when in the course of his opinion he said, `They are such powers of government as, in view of their nature and the field of their operation, are local and municipal in character.'
We further note that Article VI, Section 2 of the Ohio Constitution requires the state to provide and fund a system of public education.
 The delegates to the 1850-1851 Constitutional Convention recognized that it was the state's duty to both present and future generations of Ohioans to establish a framework for a "full, complete and efficient system of public education." II Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Ohio, 1850-51 (1851) ("Debates"). Thus, throughout their discussions, the delegates stressed the importance of education and reaffirmed the policy that education shall be afforded to every child in the state regardless of race or economic standing. Debates at 11, 13. Furthermore, the delegates were concerned that the education to be provided to our youth not be mediocre but be as perfect as could humanly be devised. Debates at 698-699. These debates reveal the delegates' strong belief that it is the state's obligation, through the General Assembly, to provide for the full education of all children within the state.
DeRolph v. State (1997), 78 Ohio St.3d 193, 203. Accord Miller v.Korns, Aud. (1923), 107 Ohio St. 287, 297:
 `This declaration is made by the people of the state. It calls for the upbuilding of a system of schools throughout the state, and the attainment of efficiency and thoroughness in that system is thus expressly made a purpose, not local, not municipal, but state wide. With this very state purpose in view, regarding the problem as a state wide problem, the sovereign people made it mandatory upon the general assembly to secure not merely a system of common schools, but a system thorough and efficient throughout the state.'
Further, in City of East Cleveland v. Board of Education
(1925), 112 Ohio St. 607, 611, the court expressly rejected the claim that Home Rule could be asserted to usurp the state-wide character of the common schools and stated:
 We do not believe that the home-rule provisions of the Constitution, as expressed in article 18 of the amendments of 1912, were ever intended by the people to authorize municipalities to invade this field or detract from this power of the state to secure a thorough and efficient system of public schools throughout the state.
In accordance with the foregoing, it is beyond dispute that measures which are implemented to promote an efficient system of education are matters of statewide rather than local or municipal concern. The Home Rule authority of a city cannot impair the power of the General Assembly to implement legislation designed to improve public schools which have been found to be in need of state supervision.
Plaintiffs insist, however, that H.B. 269 alters the local self-government of the City of Cleveland by altering the responsibilities of the city's mayor. We do not agree with this assertion as Chapter 11, Section 71 of the Charter of the City of Cleveland provides:
 "It shall be the duty of the Mayor * * * to exercise such powers and perform such duties as are conferred or required by this Charter or by the laws of the State."
(Emphasis added).
The second assignment of error is accordingly without merit.
Plaintiffs next assert that the four year delay preceding the referendum, pursuant to R.C. 3311.73, violates their right to vote by referendum for the members and organization of the school board in violation of Article VI, Section 3 of the Ohio Constitution.
The constitutional provision relating to such a referendum is as follows:
 Article VI, § 3. Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: Provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.
R.C. 3311.73 provides in relevant part as follows:
 (B) At the general election held in the first even-numbered year occurring at least four years after the date the new board assumed control of a municipal school district pursuant to division (B) of section 3311.71 of the Revised Code, the following question shall be submitted to the electors residing in the school district:
 "Shall the mayor of_____ (here insert the name of the applicable municipal corporation) _____ continue to appoint the members of the board of education of the_____ (here insert the name of the municipal school district)____?
 (C) If a majority of electors voting on the issue proposed in division (B) of this section approve the question the mayor shall appoint a new bard * * * immediately following first day of July pursuant to division (F) of section 3311.71 of the Revised Code. (Emphasis added).
The statute therefore recognizes the constitutional right to a referendum vote. The question for our review is whether the right is actually upheld by operation of the statute since the referendum will not occur until at least four years after the appointments are made and, if the voters approve the referendum, a new board is then selected less than one year later.
In State ex rel. Ach v. Evans (1914), 90 Ohio St. 243, the Supreme Court considered a challenge, based upon this constitutional provision, to the Jung Small School-Board Bill which provided in relevant part as follows:
 Said commission shall prepare and submit to the electors at the next general school election, if one occur not less than one hundred and twenty days after the passage of said resolution, otherwise, at the second general school election, two or more plans for the organization of the board of education in such district, but in no event shall less than two plans be submitted.
In actual operation, the referendum could not be scheduled until approximately two years after the Bill became effective. The Supreme Court concluded that the Bill did not violate the constitutional provision and stated:
 Now, it has always been recognized as a proper exercise of legislative power for the Legislature to determine for itself when the act or part thereof shall go into effect. This the Legislature undertook to do by putting into the act the "one hundred and twenty day' provision. The only limitation upon the Legislature in this behalf would be a constitutional limitation, and there is none suggested in this case. The mere suggestion by counsel that this necessarily carries a referendum election beyond the time of the first regular November election for members of the school board cannot be used as the basis of a claim of unconstitutionality. Statutes cannot be held unconstitutional upon the ground that somebody disagrees with the Legislature as to the time at which an act should take effect. The Legislature is presumed to have acted in good faith, and there is nothing in the record to overcome that presumption.
Defendants assert that this case justifies the four year delay in holding a referendum, pursuant to R.C. 3311.73. Defendants do not provide, and we are unable to locate any case law which so construes State ex rel. Ach v. Evans, and no case law which justifies the four year delay. We are required to apply the precedent from the Supreme Court; State v. Smith (1997), 80 Ohio St.3d 89,102; Marsh v. State Auto. Mut. Ins. Co. (1997),123 Ohio App.3d 356, 362, we are not permitted to unfairly extend such precedent. Further, we believe that the delay is inordinately long when considered in relation to the extremely brief time during which the board serves following the referendum. See R.C. 3311.73 (C). This assignment of error is well-taken and the legislation must be stricken insofar as it provides for a four year delay in holding a referendum pursuant to R.C. 3311.73.
Plaintiffs next assert that H.B. 269 violates the Equal Protection Clause and Uniformity Clause of the Ohio Constitution since it eliminates the need for state licensing, educational and experiential requirements for the superintendent, treasurer, and business manager of the municipal school district.
The General Assembly's power to legislate is limited solely by the state and federal Constitutions. State ex rel. Swetland v.Kinney (1982), 69 Ohio St.2d 567, 573; Desenco v. Akron (1999),84 Ohio St.3d 535, 538. Thus, the licensing, educational, and experiential requirements stated in the state's statutes do not, in and of themselves, bar this legislation.
In determining whether H.B. 269 violates the constitutional guarantee of equal protection, we note that the Equal Protection Clause requires only that the classification rationally further a legitimate state interest, unless the classification categorizes on the basis of an inherently suspect characteristic or jeopardizes the exercise of a fundamental right. ValvolineInstant Oil Change, Inc. v. Tracy (1997), 78 Ohio St.3d 53, 55;Klepper v. Ohio Bd. of Regents (1991), 59 Ohio St.3d 131, 133.
In applying this test, we note that H.B. 269 involves no suspect classification. As to whether it jeopardizes the exercise of a fundamental right, plaintiffs insist that H.B. 269 impairs the right to education and voting to determine the composition of the school board by referendum.
In assessing these claims, we must first note the mechanics of the legislation. H.B. 269 provides for the appointment of a board of education and chief executive officer. The new board serves for at least four years. Then, at the general election held in the first even-numbered year occurring at least four years after the date the new board assumed control, a mandatory referendum is held at which the voters decide whether the mayor shall continue to appoint members of the board of education.[5] If the voters disapprove of the appointment system, a new, seven-member board shall be elected at the next regular election occurring in November of the next odd-numbered year. See R.C. 3311.73.
Beginning our analysis, it is clear that although the Supreme Court has indicated that it may be inclined to consider education as a fundamental right, see DeRolph v. State, supra, H.B. 269 does not relate to education but to the administrative oversight of the schools. The legislation does not jeopardize education.
Turning to the issue of the referendum vote, plaintiffs complain that if the appointment plan is approved, the right to subsequent referendum votes will be extinguished, and the composition of the board will be determined solely by appointment. Plaintiffs also complain that the challenged legislation impairs the constitutional right, set forth in Article VI, Section 3, of the Ohio Constitution, of the electorate of city school districts to determine by referendum vote the number of members and the organization of their boards of education.
As to plaintiffs' complaint that if the voters approve the appointments at a referendum, the appointment powers continue unchecked into the future and the power to vote at referendum is then lost, we examine the key statutory language.
In relevant part, R.C. 3311.73 provides:
 (B) At the general election held in the first even-numbered year occurring at least four years after the date the new board assumed control of a municipal school district pursuant to division (B) of section 3311.71 of the Revised Code, the following question shall be submitted to the electors residing in the school district:
 "Shall the mayor of_____ (here insert the name of the applicable municipal corporation) _____ continue to appoint the members of the board of education of the_____ (here insert the name of the municipal school district) _____?"
* * *
 (C) If a majority of electors voting on the issue proposed in division (B) of this section approve the question, the mayor shall appoint a new board * * * immediately following first day of July pursuant to division (F) of section 3311.71 of the Revised Code.
The actual language to be submitted to the voters focuses upon whether the mayor shall continue his powers of appointment and would appear to end the right to future referendum votes if the question is approved by a majority of voters. However, if the question is approved, the mayor may then appoint a "new board," and, language in R.C. 3311.73 (B) indicates that four years after the date the new board assumed control, the duty to hold a referendum is again triggered. It is therefore unclear whether the statute provides for a single referendum, which if approved, permanently vests the mayor with appointment powers in the future or whether a referendum is to be held each time a new board is constituted. This ambiguity requires us to interpret that which is unclear. See, e.g., Call v. C. M. Sader Excavating Paving,Inc. (1980), 68 Ohio App.2d 41, 47.
In undertaking this task, we are guided by the rule that where there is more than one possible interpretation of a statute, the court must construe the statute so as to save it from constitutional infirmities. State v. Dario (1995), 106 Ohio App.3d 232,236.
We also note that the right to vote is clearly a fundamental right. See Dunn v. Blumstein (1972), 405 U.S. 330, 336,92 S.Ct. 995, 999-1000. Moreover,
 "[t]he very purpose of the Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections."
West Virginia Board of Education v. Barnette (1943),319 U.S. 624, 638, 63 S.Ct. 1178 1185, 87 L.Ed. 1628. See, also, Stanfordv. Kentucky (1989), 492 U.S. 361, 109 S.Ct. 2969, 2987.
In accordance with the foregoing, the ambiguity in R.C. 3311.73
must be resolved by requiring a referendum vote after each "new board" is selected. The constitutional prohibition against terminating fundamental rights[6] through majority vote precludes the mayor from having unchecked appointment powers in the future if the first referendum is approved by a majority of the voters.
In accordance with the foregoing[7] the legislation does not usurp fundamental rights.
As to whether the legislation impairs the rights granted in Article VI, Section 3, by allowing appointment to precede the referendum, we note that the right to referendum vote is not completely unfettered as the relevant constitutional provision states:
 Article VI, § 3. Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: Provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.
(Emphasis added).
This provision clearly contemplates the enactment of laws pursuant to which the right to referendum is to be regulated and organized. Moreover, as the Supreme Court stated in State ex rel.Ach v. Evans, supra:
 It is obvious that this provision of the Constitution does not require that, before any change shall be made in the old board, a referendum shall be provided determining what change shall be made. The change in membership is provided under the general exercise of Legislative power, while the referendum is provided for under the new constitutional amendment and the new Jung school board act passed pursuant to such new constitutional provision. The constitutional provision granted the Legislature the power to provide by law for the exercise of the referendum power. This the Legislature has done agreeably to the Constitution.
We therefore see no impediment to the challenged legislation insofar as the appointment precedes the referendum because the electorate retains the ultimate authority over the selection of the board. Cf. James v. Valtierra (1971), 402 U.S. 137, 141,91 S.Ct. 1331, 1334 (provision for referendum serves as a safeguard to the democratic process)
In short, as interpreted by this court, and notwithstanding the invalidity of the four year delay in holding the referendum, the legislation does not impair or jeopardize any fundamental rights and we must determine only whether H.B. 269 rationally furthers a legitimate state interest; the legislation is not subject to strict scrutiny. In this connection, we note that in the landmark case of Sailors v. Bd. of Ed. (1967), 387 U.S. 105, 111,87 S.Ct. 1549, 1553, the Supreme Court of the United States determined that there was no constitutional prohibition against the appointment of county school board members. The Court stated:
 Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions.
We further note, with respect to plaintiffs' complaint that H.B. 269 removes various requirements for superintendents, treasurers, business managers and administrators, that in Garonov. State Bd. (1973), 35 Ohio St.2d 44, 46, the court rejected an equal protection challenge to a "grandfather" provision exempting certain individuals from taking an examination in order to be licensed as landscape architects.
Applying the foregoing, it is clear to us that when a school district is ordered by the federal court to submit to supervision and operational, fiscal and personnel management of the district by the state superintendent of public instruction, see R.C.3311.71 (A) (1), an extremely dire situation has occurred. Indeed, in this instance, the federal court found, inter alia, that the Cleveland City School District had virtually exhausted its operating fund budget of approximately $500,000,000 for the fiscal year, had a projected shortfall of almost $30,000,000, and had an "absence of effective Fiscal and Management Controls[.]"See Reed v. Rhodes (N.D.Ohio 1995), Case No. 1:73CV1300. Problems such as these which result in the federal court order of supervision mandate a conscientious effort to implement change. In that it presents the likelihood that persons capable of genuine solutions, who may or may not meet the otherwise applicable requirements, may be selected to address the grave state of the schools, and in that it widens the scope of consideration for individuals who may bring solutions to bear, the legislation rationally furthers a legitimate state interest.
As to the uniformity challenge, the Uniformity Clause, Section 26, Article II, states: "All laws, of a general nature, shall have a uniform operation throughout the state * * *."
A two-part test is applied to determine whether legislation complies with this mandate: (1) the court must determine whether the statute is a law of a general or special nature, and (2) the court must determine whether the statute operates uniformly throughout the state. Put-In-Bay Island Taxing Dist. Auth. v.Colonial, Inc. (1992), 65 Ohio St.3d 449, 451.
The manner of determining whether a statute is of general operation was stated in State ex rel. Stanton v. Powell (1924),109 Ohio St. 383, 385, as follows:
 Section 26, Art. II of the Constitution, was not intended to render invalid every law which does not operate upon all persons, property or political subdivisions within the state. It is sufficient if a law operates upon every person included within its operative provisions, provided such operative provisions are not arbitrarily and unnecessarily restricted. And the law is equally valid if it contains provisions which permit it to operate upon every locality where certain specified conditions prevail. A law operates as an unreasonable classification where it seeks to create artificial distinctions where no real distinction exists
Accord Desenco v. Akron, supra, 84 Ohio St.3d at 542.
With particular regard to this matter, the Ohio Supreme Court has rejected the claim that the School Voucher Program fails to operate uniformly. See Simmons-Harris v. Goff, supra. That program, like H.B. 269, is limited to "school districts that are or have ever been under a federal court order requiring supervision and operational management of the district by the state superintendent." In rejecting the Uniformity Clause challenge, the Supreme Court stated:
 It is clear that the current School Voucher Program does not apply to the vast majority of the school districts of the state. At the time this case was filed, the School Voucher Program was in effect only within the Cleveland City School District. However, that does not mean that the School Voucher Program cannot satisfy the Uniformity Clause.
* * *
 The Cleveland City School District is the only school district that is currently eligible for the School Voucher Program. However, the statutory limitation, as amended, does not prohibit similarly situated school districts from inclusion in the School Voucher Program in the future. R.C. 3313.975 (A).
 The General Assembly had a rational basis for enacting the School Voucher Program, which relates to a statewide interest, and for specifically targeting the Cleveland City School District, which is the largest in the state and arguably the one most in need of assistance. Further, the School Voucher Program is a pilot program, which suggests that the General Assembly is experimenting to determine whether the voucher concept is beneficial or worthy of future implementation. Though the School Voucher Program is currently limited to one school district, we conclude that the General Assembly did not arbitrarily or unnecessarily restrict the operative provisions of the program.
Similarly, H.B. 269 operates upon every school district which is or has ever been under a federal court order requiring supervision and operational, fiscal and personnel management of the district by the state superintendent of public instruction." See R.C. 3311.71 (A) (1). These operative provisions can potentially take effect anywhere in the state. They reflect genuine, serious criteria and are not arbitrary. Presently, and fortunately, only the Cleveland City School District is affected by this legislation, but if other districts meet the criteria of a municipal school district in the future, they will clearly come within operation of H.B. 269. There is therefore uniform operation. See State ex rel. Zupancic v. Limbach (1991), 58 Ohio St.3d 130,138.
The fourth assignment of error is well-taken insofar as plaintiffs challenge the four year delay before a referendum is held. Consistent with our interpretation of R.C. 3311.73, to require a referendum after each new board is constituted and not just following the first appointment of a new school board, the remainder of the assignment of error is without merit.
Within their fifth assignment of error, plaintiffs contend that the authority vested in a municipal mayor pursuant to H.B. 269 conflicts with the general duties associated with that position, including the duty to advocate for tax abatement.
As the federal court aptly noted in rejecting this contention,
 This cause of action is not premised on violation of either the U.S. Constitution. A statute must be enforced unless it is in clear and irreconcilable conflict with some express provision of the constitution. State ex rel. Price v. Hdwe., 105 Ohio St. 304, 306, 137 N.E. 167 (1922). No express provision in either of the constitutions conflicts with the mayor's responsibility under H.B. 260 to appoint board members.
 The General Assembly has enacted a statute whereby the mayor, in certain circumstances, appoints school board members. If some conflict did exist under previous laws, the General Assembly's more recent, more specific statute takes precedence over earlier general legislation. O.R.C. Section 1.52. State ex rel. Brown v. Rockside Reclamation, Inc., 47 Ohio St.2d 76, 351 N.E.2d 448, 453
(1976). The Plaintiffs have not shown any incompatibility or conflict with any other law of Ohio.
We adopt this reasoning herein and reject this assignment of error.
In their sixth assignment of error, plaintiffs assert that H.B. 269 confers corporate powers upon the mayor of the municipal district in violation of Article XIII, Section 1 of the Ohio Constitution.
Section 1, Article XIII of the Constitution provides:
 The general assembly shall pass no special act conferring corporate powers.
It is well-settled, however, that where the subject matter of legislation does or may exist in and affect the people of every county in the state, such legislation is of a general nature; where the subject matter of legislation cannot exist in or affect the people of every county, such legislation is local or special. See State ex rel. Saxbe v. Alexander (1959), 168 Ohio St. 404, syllabus; Brown v. State (1929) 34 Ohio App. 201, 204.
As we have already determined that H.B. 269 is of a general nature and may potentially apply to any school district, see our discussion of the fourth assignment of error, supra, no special act has been adopted and this contention must therefore fail.
The sixth assignment of error is without merit.
The judgment of the trial court is reversed insofar as it upheld the four year delay in holding a referendum pursuant to R.C. 3311.73. Consistent with our interpretation that R.C.3311.73 requires a referendum each time a new board of education is appointed, the remainder of this matter is affirmed.
It is ordered that appellants and appellees share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., AND ANNE L. KILBANE, J.,CONCUR.
 _________________________________ ANN DYKE PRESIDING JUDGE
[1] Ms. Smith, Ms. Debose, and Ms. Henley are parents of children who attend school within the Cleveland City School District and are registered voters and/or taxpayers in the City of Cleveland. Dr. Green is a taxpayer and registered voter in the Village of Bratenahl within the Cleveland City School District.
[2] It is clear that by application of state law, this action is barred by the preclusive effect of the prior judgment. SeeStromberg v. Board of Ed. of Bratenahl (1980), 64 Ohio St.2d 98,101 (a judgment for or against a governmental body is binding and conclusive as res judicata on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest); Cincinnati ex rel. Crotty v.Cincinnati (1977), 50 Ohio St.2d 27, 28 (a judgment for or against a governmental body is binding and conclusive as res judicata on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest);Goudreau v. Cleveland (1985), 30 Ohio App.3d 179, 181 (where ordinance regarding occupancy certificate fee had been declared constitutional in previous action, that previous decision was res judicata where taxpayers brought subsequent action to challenge fees)
[3] At this juncture, it is important to note that in determining whether a statute bears a rational relationship to a legitimate state purpose, a court may, consistent with Civ.R. 12 (B) (6), go outside of the pleadings to hypothesize reasons supporting the legislation. See Mahone v. Addicks UtilityDistrict of Harris Cty. (C.A.5 1988), 836 F.2d 921, 936.
[4] Plaintiffs' additional claim herein that the legislation contravenes Article XVIII, Section 2 of the Ohio Constitution was not raised within their amended complaint and will not be addressed herein.
[5] In accordance with our resolution of the previous assignment of error, this time period can no longer stand.
[6] Defendants complain that the right, contained within Section 3, Article VI of the Ohio Constitution, of the electorate of city school districts to determine the number of members and organization of the district board of education, does not set forth a fundamental voting right since this right is, by definition, not granted to the electorate of smaller school districts. We cannot agree. Section 1, Article XVIII of the Ohio Constitution provides that "municipal corporations are hereby classified into cities and villages." Under the entire scheme of the law of this state, the transition from village to city status triggers a panoply of voting rights, which can, in general, include the right to ward representation, 1955 Ohio Atty.Gen. Ops. No. 5852, the right to vote for a treasurer, auditor, and law director, see R.C. Chapter 733. See, generally, Gotherman, Transition from Village to City Status (1980), 9 Capital U.L.Rev. 621. These voting rights, having become vested once the municipal corporation is designated a city, are fundamental to that electorate. As the Supreme Court has observed, once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Constitution. See Kramer v. Union FreeSchool District No. 15 (1969), 395 U.S. 621, 629, 89 S.Ct. 1886,1890; Harper v. Virginia Board of Elections (1966), 383 U.S. 663,665, 86 S.Ct. 1079, 1080. Further, these local school boards have the power to tax and control the education process and we therefore conclude that representation is essential and the right to vote is fundamental. Cf. Pittman v. Chicago Bd. Of Educ.
(C.A.7 1995), 64 F.3d 1098, 1103.
[7] In light of our interpretation herein, the Legislature should revise the language of the question submitted to the voters pursuant to the referendum election required under R.C.3311.73.